UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

STRONG MEMORIAL HOSPITAL,
A DIVISION OF THE UNIVERSITY
OF ROCHESTER, et al.,

Plaintiffs,

v.

ROBERT F. KENNEDY, JR.,
Secretary of Health and Human Services,

Defendant.

Civil Action No. 25-2612 (CKK)

**REPLY MEMORANDUM IN SUPPORT OF**
**DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................... ii

INTRODUCTION .................... 1

ARGUMENT .................... 3

I. The Hospitals' Challenge of the Uniform Method Lacks Merit .................... 3

A. The Providence Hospitals Cannot Relitigate *St. Mary* .................... 3

1. Claim Preclusion Bars St. Mary's and Mission Hospital's Legal Claims .................... 3

2. Issue Preclusion Bars the Providence Hospitals' Arguments .................... 5

B. The Uniform Method Is Lawful and Lawfully Explained .................... 12

1. The Hospitals' Statutory-Authority Claim Lacks Merit .................... 12

2. The Complaint's Arbitrary-and-Capricious Claim Lacks Merit .................... 18

II. The Hospitals' Challenge of the Self-Disallowance Regulations Lacks Merit .................... 19

A. The Challenge Is Unripe .................... 20

B. The Regulations Are Lawful and Lawfully Explained .................... 20

1. The Regulations Are Within the Secretary's Statutory Authority .................... 20

2. Issuance of the Regulations Was Not Arbitrary and Capricious .................... 25

CONCLUSION .................... 25

# TABLE OF AUTHORITIES

**Cases**

*Agendia Inc. v. Kennedy*,
No. 24-5180, 2025 WL 1467116 (D.C. Cir. May 22, 2025) .................................................. 11

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)................................................................................................................. 6

*Anglers Conservation Network v. Pritzker*,
139 F. Supp. 3d 102 (D.D.C. 2015)......................................................................................... 14

*Ashbourne v. Hansberry*,
894 F.3d 298 (D.C. Cir. 2018) .................................................................................................. 4

*Battle Creek Health Sys. v. Kennedy*,
151 F.4th 464 (D.C. Cir. 2025)................................................................................................ 22

*Bethesda Hospital Ass'n v. Bowen*,
485 U.S. 399 (1988)........................................................................................... 22, 23, 24, 25

*Cactus Canyon Quarries, Inc. v. Fed. Mine Safety & Health Review Comm'n*,
820 F.3d 12 (D.C. Cir. 2016) .................................................................................................. 22

*Campaign Legal Ctr. v. FEC*,
Civ. A. No. 22-3319 (CRC), 2023 WL 6276634 (D.D.C. Sept. 26, 2023) ............................. 11

*Canonsburg Gen. Hosp. v. Burwell*,
807 F.3d 295 (D.C. Cir. 2015) ............................................................................................. 5, 10

*Cavazos v. Haaland*,
579 F. Supp. 3d 141 (D.D.C. 2022)................................................................................... 14, 16

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)................................................................................................................. 6

*Chevron U.S.A. Inc. v. Natural Res. Def. Council*,
467 U.S. 837 (1984)........................................................................................................ *passim*

*D.C. Fed'n of Civic Ass'ns v. Airis*,
391 F.2d 478 (D.C. Cir. 1968) ................................................................................................ 13

*Epic Sys. Corp. v. Lewis*,
584 U.S. 497 (2018)................................................................................................................ 14

---

* Authorities upon which we chiefly rely are marked with asterisks.

*Federated Dep't Stores, Inc. v. Moitie*,
452 U.S. 394 (1981)........................................................................................................ 11

*FS Credit Opportunities Corp. v. Saba Capital Mgmt.*,
146 S. Ct. 1546 (2026)...................................................................................................... 14

*Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*,
559 U.S. 280 (2010)........................................................................................................ 16

* *Gulf Power Co. v. FCC*,
669 F.3d 320 (D.C. Cir. 2012)...................................................................................*passim*

*Hikvision USA, Inc. v. FCC*,
97 F.4th 938 (D.C. Cir. 2024)........................................................................................... 12

*Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*,
101 F.3d 145 (D.C. Cir. 1996)...................................................................................... 7, 8

*King v. Burwell*,
576 U.S. 473 (2015)........................................................................................................ 14

*Long v. Howard Univ.*,
550 F.3d 21 (D.C. Cir. 2008)........................................................................................... 10

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024)...................................................................................................*passim*

*Medina v. Planned Parenthood S. Atl.*,
606 U.S. 357 (2025)........................................................................................................ 14

*Nat'l Med. Enters. v. Sullivan*,
916 F.2d 542 (9th Cir. 1990) .............................................................................................. 9

*Natural Res. Def. Council v. EPA*,
513 F.3d 257 (D.C. Cir. 2008)............................................................................................. 5

*Palisades Gen. Hosp. v. Leavitt*,
426 F.3d 400 (D.C. Cir. 2005)........................................................................................... 20

*Rural Cellular Ass'n v. FCC*,
588 F.3d 1095 (D.C. Cir. 2009)......................................................................................... 25

* *St. Mary Med. Ctr. v. Becerra*,
581 F. Supp. 3d 119 (D.D.C. 2022)...........................................................................*passim*

*Taylor v. Sturgell*,
553 U.S. 880 (2008).................................................................................................... 8, 9

*Thompson v. Clifford*,
408 F.2d 154 (D.C. Cir. 1968) ........ 13

*UC Health v. NLRB*,
803 F.3d 669 (D.C. Cir. 2015) ........ 22

*Univ. of Chi. Med. Ctr. v. Kennedy*,
No. 24-5188, 2025 WL 3183158 (D.C. Cir. Nov. 14, 2025) ........ 24

*Univ. of Colo. Health v. Azar*,
486 F. Supp. 3d 185 (D.D.C. 2020) ........ 9

*West Virginia v. B. P. J.*,
146 S. Ct. 2356 (2026) ........ 1, 13

**Statutes**

* 42 U.S.C. § 1395g(a) ........ 21, 22, 23, 24

42 U.S.C. § 1395*oo*(a)(1) ........ 23

42 U.S.C. § 1395*oo*(a)(1)(A) ........ 23, 24

42 U.S.C. § 1395*oo*(a)(1)(A)(i) ........ 21

42 U.S.C. § 1395*oo*(d) ........ 23, 24

Balanced Budget Act of 1997,
Pub. L. No. 105-33, 111 Stat. 251 ........ 1, 16

§ 4410, 111 Stat. at 402 ........ 1, 17

§ 4410(b), 111 Stat. at 402 ........ *passim*

Patient Protection and Affordable Care Act,
Pub. L. No. 111-148, 124 Stat. 119 (2010) ........ *passim*

* § 3141, 124 Stat. at 441 ........ *passim*

**Rules & Regulations**

42 C.F.R. § 413.24(f)(5)(i) ........ 24

CY 2015 Final Rule,
80 Fed. Reg. 70,298 (Nov. 13, 2015) ........ 22, 25

D.D.C. Loc. Civ. R. 7(h) ........ 7

D.D.C. Loc. Civ. R. 7(h)(1) ........ 7

Fed. R. Civ. P. 8(c)(1) ........ 6

FY 2008 Final Rule,
72 Fed. Reg. 47,130 (Aug. 22, 2007) ........ 17, 18

FY 2009 Final Rule,
73 Fed. Reg. 48,434 (Aug. 19, 2008) ........ 15

**Other Authorities**

1 Restatement (Second) of Judgments (1982) ........ 8

§ 39 ........ 8

§ 39 cmt. a ........ 8

§ 39 cmt. c ........ 8, 9

America's Healthy Future Act,
S. 1796, 111th Cong. (2009) ........ 15, 16

§ 3142 ........ 15, 16

Patient Protection and Affordable Care Act,
H.R. 3590, 111th Cong. (2009) ........ 15

S. Amend. 2786,
155 Cong. Rec. S11607, S11695 (daily ed. Nov. 19, 2009) ........ 15

S. Rep. No. 111-89 (2009) ........ 13, 15, 16

Safeguarding Our Hospitals' Futures Act of 2009,
H.R. 2525, 111th Cong. § 2 (2009) ........ 15

Safeguarding Our Hospitals' Futures Act of 2009,
S. 1108, 111th Cong. § 2 (2009) ........ 15

## INTRODUCTION

This case presents multiple legal questions of first impression and several subsidiary issues, including what impact, if any, the overruling of *Chevron U.S.A. Inc. v. Natural Resources Defense Council*, 467 U.S. 837 (1984), by *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), has on issue preclusion; the effect corporate control has on preclusion principles as applied in the context of a large hospital chain; and the legality of self-disallowance regulations promulgated by the Secretary of Health and Human Services (the "Secretary") over a decade ago establishing requirements for what Medicare providers must do in their cost reports to receive payment under Medicare Part A. However, the Court can resolve this action in its entirety by answering a single question in the affirmative: when Congress enacted section 3141 of the Patient Protection and Affordable Care Act ("ACA"), Pub. L. No. 111-148, 124 Stat. 119, 441 (2010), did it require the Secretary, beginning in fiscal year ("FY") 2011, to use the uniform method he used in FY 2008 to budget-neutralize the rural floor required by section 4410 of the Balanced Budget Act of 1997 ("BBA"), Pub. L. No. 105-33, 111 Stat. 251, 402? That is how the Secretary has consistently interpreted ACA § 3141 for over 16 years dating back to just months after the ACA's enactment.

The Supreme Court recently reconfirmed that although *Chevron* is no longer good law, an agency's statutory interpretation issued contemporaneously with the statute that has remained consistent over time is "'especially useful in determining the statute's meaning.'" *West Virginia v. B. P. J.*, 146 S. Ct. 2356, 2371 (2026) (quoting *Loper Bright*, 603 U.S. at 394). Such is the case here. However, the reply brief submitted by Plaintiffs Strong Memorial Hospital, et al. (collectively, the "Hospitals") ignores altogether the significance of the Secretary's longstanding, consistent interpretation. Instead, the Hospitals now resort to a completely new argument, presented for the first time in their reply brief, predicated on the ACA's supposed legislative history. *See* Pls.' Reply Mem. in Supp. of Mot. for Summ. J. & Opp'n to Def.'s Cross-Mot. for

Summm. J. at 8 (ECF No. 28) ("Pls.' Reply"). Not only have the Hospitals forfeited this argument by failing to raise it sooner, they ask this Court to credit a statement made in a single committee report discussing legislation that Congress passed over a decade earlier. That, too, runs afoul of Supreme Court precedent.

Moreover, a significant number of the Hospitals are barred by preclusion principles from relitigating the legality of the uniform method. Two of the Hospitals—St. Mary Medical Center ("St. Mary") and Mission Hospital Regional Medical Center ("Mission Hospital"), which are joined here by several sister hospitals in the same corporate family (collectively, the "Providence Hospitals")—are barred by claim preclusion because they previously litigated and lost the same claim in *St. Mary Medical Center v. Becerra*, 581 F. Supp. 3d 119 (D.D.C. 2022). Issue preclusion also applies to the Providence Hospitals as whole. Without submitting any contrary evidence or even claiming its existence, the Providence Hospitals contend in their final brief that the admitted fact that their common corporate parent (Providence St. Joseph Health) controlled St. Mary's and Mission Hospital's participation in the *St. Mary* litigation is insufficient to apply issue preclusion to those Providence Hospitals that were not named plaintiffs in *St. Mary*. A correct application of *Gulf Power Co. v. FCC*, 669 F.3d 320 (D.C. Cir. 2012), and the procedural rules for what is required of a nonmovant to successfully oppose summary judgment, proves otherwise. *Loper Bright*'s overruling of *Chevron* should not affect that outcome because the Hospitals cannot demonstrate there is any "basic unfairness" presented here.

Finally, the Secretary argued that the Court need not reach the legality of the self-disallowance regulations if the Court agrees that the Hospitals' claims for almost $100 million in additional Medicare reimbursement lack merit. *See* Def.'s Mem. at 44. The Hospitals do not disagree. Instead, they challenge the Secretary's contention that if the Court agrees with the

Hospitals on the merits of their reimbursement claims, the question of the self-disallowance regulations' legality is unripe. The Hospitals' assertion of ripeness is incorrect because it presupposes how the Secretary would implement such a decision by this Court and, in any event, the Secretary's self-disallowance regulations are lawful and lawfully explained.

Accordingly, as addressed more fully below, the Court should grant summary judgment to the Secretary and deny the Hospitals' motion for summary judgment.

## ARGUMENT

### I. <u>The Hospitals' Challenge of the Uniform Method Lacks Merit</u>

#### A. The Providence Hospitals Cannot Relitigate *St. Mary*

Although the Court can resolve this action solely by affirming the Secretary's longstanding interpretation of ACA § 3141, the preclusion questions presented by this case warrant threshold consideration by the Court given the Hospitals' attempt to sidestep an earlier judicial decision.

##### 1. <u>Claim Preclusion Bars St. Mary's and Mission Hospital's Legal Claims</u>

St. Mary and Mission Hospital concede that *Loper Bright*'s overruling of *Chevron* is irrelevant for claim-preclusion purposes. *See* Pls.' Reply at 24 (acknowledging "intervening-change-in-law exception is a feature of issue preclusion, not claim preclusion") (emphasis omitted). They also do not contest the Secretary's showing that *St. Mary* resulted in a final, valid judgment on the merits entered in a case decided by a court of competent jurisdiction involving the same parties. *See* Mem. of P. & A. in Supp. of Def.'s Cross-Mot. for Summ. J. & Opp'n to Pls.' Mot. for Summ. J. at 25–26 (ECF No. 25) ("Def.'s Mem."). The only element of claim preclusion the two hospitals dispute is whether *St. Mary* and this case involve the same cause of action. *See* Pls.' Reply at 18–20.

They do under the standard established by Circuit precedent. The "test is whether the latter case involves issues that were or could have been raised in the earlier case." *Ashbourne v.*

*Hansberry*, 894 F.3d 298, 302 (D.C. Cir. 2018) (internal quotation marks and citation omitted). The two hospitals do not dispute that *St. Mary* decided that the Secretary's uniform method complies with BBA § 4410(b). *See* Def.'s Mem. at 16, 25; *St. Mary*, 581 F. Supp. 3d at 135–38. Instead, the two hospitals contend that because this case involves the same uniform method applied in a subsequent time period that *also* is subject to a later-enacted statute (ACA § 3141), they are free to relitigate whether the uniform method complies with BBA § 4410(b). *See* Pls.' Reply at 18–20.

Not so. Importantly, the two hospitals never contend that ACA § 3141 supports their claim that the uniform method is unlawful. *See, e.g.*, Pls.' Reply at 2 (arguing that ACA § 3141 "said nothing about which hospitals bear the [budget-neutrality] adjustment"). In fact, the Complaint in this case barely mentions ACA § 3141, *see* Compl. ¶¶ 24–25, which likewise is omitted from the two anonymous regulatory comments discussed in this case, *see* Rulemaking Record ("RR") 653–56; *see also* Def.'s Mem. at 17. Instead, the two hospitals challenge the Secretary's reliance on ACA § 3141 for the proposition that by instructing the Secretary to "administer" BBA § 4410(b) "in the same manner as the Secretary administered such subsection (b) . . . for [hospital] discharges occurring during [FY] 2008 (through a uniform, national adjustment to the area wage index)," ACA § 3141 instructed the Secretary to reuse the uniform method he used in FY 2008. *See* Def.'s Mem. at 36–40. In other words, the two hospitals do not use ACA § 3141 as a sword. They challenge the *Secretary's* use of ACA § 3141 as a *shield*. This attempted legal bank-shot should be rejected because, at bottom, the Hospitals are still asking this Court to revisit the issue that was decided against them in *St. Mary*: whether the uniform method complies with BBA § 4410(b). The "same cause of action" element is thus satisfied. *See, e.g.*, *Natural Res. Def. Council v. EPA*,

513 F.3d 257, 260–61 (D.C. Cir. 2008) (finding two cases presented same cause of action where plaintiff sought to relitigate validity of same agency methodology applied in a subsequent year).[1]

2. Issue Preclusion Bars the Providence Hospitals' Arguments

*This case satisfies the "sameness" element.* The Providence Hospitals make a similar "sameness" argument against application of *issue* preclusion, *see* Pls.' Reply at 18, which, among other things, requires that the "same issue now being raised must have been contested by the parties and submitted for judicial determination in the prior case," *Canonsburg Gen. Hosp. v. Burwell*, 807 F.3d 295, 301 (D.C. Cir. 2015) (internal quotation marks and citation omitted). As explained above, the Secretary's reliance on ACA § 3141 in this case is an additional argument against the Hospitals' contention that the uniform method violates BBA § 4410(b). The same underlying question decided in *St. Mary*—whether the uniform method violates BBA § 4410(b)—is presented in this case.

This case also satisfies the "sameness" element as to the parties involved. Citing *Gulf Power*, 669 F.3d 320, the Secretary explained that even those Providence Hospitals that were not named plaintiffs in *St. Mary* are subject to the preclusive consequences of Judge Pan's final order in that case. *See* Def.'s Mem. at 2, 28–29. The Secretary further explained that the present record, which includes stipulations of fact, demonstrated that the Providence Hospitals' indirect corporate parent (Providence St. Joseph Health) controlled St. Mary's and Mission Hospital's participation

[1] A hypothetical helps further illustrate this distinction. Suppose that the two hospitals failed to file suit within the time required by statute and, as a result, the Secretary were to assert that the two hospitals' claims are time-barred. The fact that the Secretary asserts a timeliness defense does not thereby transform the question of whether the uniform method complies with BBA § 4410(b) into a new cause of action for claim-preclusion purposes. The same is true here insofar as the Secretary's reliance on ACA § 3141 is concerned.

in the *St. Mary* litigation *and* controls the Providence Hospitals' participation in this action. *See id.* at 29.

The Providence Hospitals admit these facts. *See* Def.'s Statement of Material Facts Not in Dispute ¶¶ 15, 19 (ECF No. 25) ("Def.'s SOF"); Pls.' Resp. to Def.'s SOF ¶¶ 15, 19 (ECF No. 28-1) ("Pls.' SOF Resp."). But according to the Providence Hospitals' final brief, controlling the two hospitals' "participation" in the *St. Mary* litigation is merely a "statement about the parent's relationship to the two named hospitals, not a statement that the parent, or the sixteen non-party hospitals, controlled the litigation itself." Pls.' Reply at 22. In so arguing, the Providence Hospitals noticeably stop short of actually denying that Providence St. Joseph Health so involved itself in the *St. Mary* litigation. They also have not submitted a single declaration that would support such a denial.

The Providence Hospitals' argument against the application of *Gulf Power* suffers from at least five defects.

First, the argument ignores the Supreme Court's framework for summary judgment. A nonmoving party must establish more than the "mere existence of a scintilla of evidence" in support of its position. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). And a moving party may succeed on summary judgment by pointing to the absence of evidence proffered by the nonmoving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Such is the case here. The Providence Hospitals have not submitted anything other than the unsworn assertions of their counsel in their final brief challenging the Secretary's statement that Providence St. Joseph Health controlled St. Mary's and Mission Hospital's participation in the *St. Mary* litigation.

Second, it flouts this Court's procedural requirements governing summary judgment. Issue preclusion is an affirmative defense. *See* Fed. R. Civ. P. 8(c)(1). Because that defense as applied

here relies on materials outside the administrative record—the Secretary submitted a Statement of Material Facts Not in Dispute under Local Civil Rule 7(h)(1) in cross-moving for summary judgment. The local rule also instructs that "[a]n opposition to such a motion shall be accompanied by a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the parts of the record relied on to support the statement." This Court's standing order further emphasizes that the "party opposing the motion must . . . submit a statement enumerating all material facts which the party contends are genuinely disputed and thus require trial." Order Establishing Procedures for Civil Cases Assigned to Judge Colleen Kollar-Kotelly ¶ 12(B)(i) (ECF No. 4) ("Standing Order").

The statement submitted by the Providence Hospitals identifies not a single genuine issue requiring trial. Moreover, their statement formally admits the assertion in the Secretary's statement that "Providence St. Joseph Health controlled St. Mary's and Mission Hospital's participation in the St. Mary Litigation." *Compare* Def.'s SOF ¶ 15, *with* Pls.' SOF Resp. ¶ 15. The Providence Hospitals should not be permitted to use their final brief to misconstrue what that statement means—claiming it speaks solely to the parent's *ownership* of the two subsidiaries even though the Secretary's statement specifically addresses corporate ownership in several other paragraphs that the Providence Hospitals also admit, *see* Def.'s SOF ¶¶ 11–17, Pls.' Resp. to Def.'s SOF ¶¶ 11–17, without identifying a single factual dispute requiring trial. *See Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 150 (D.C. Cir. 1996) (endorsing strict compliance with what is now Local Civil Rule 7(h)); *see also* Standing Order ¶ 12(B)(i) (warning that this Court "**strictly adheres to the dictates of Local Civil Rule 7(h)**"

and advising that parties "are strongly encouraged to carefully review *Jackson v. Finnegan*") (emphasis in original).

Third, the Providence Hospitals' argument rests on a misreading of *Gulf Power* and its application of *Taylor v. Sturgell*, 553 U.S. 880 (2008). Contrary to the suggestion made by the Providence Hospitals, *Gulf Power* teaches that whether a fellow subsidiary had control over previous litigation prosecuted by another subsidiary is not dispositive. What matters is that the common corporate parent exercised control over the subsidiary's previous litigation. *See Gulf Power*, 669 F.3d at 323 (quoting *Taylor v. Sturgell*'s recitation of the "control" exception for non-party preclusion and concluding: "We find such control here. [The two subsidiaries] were under the common control and complete ownership of their parent entity . . . . Both companies were thus servants to the same master.").

Fourth, the Providence Hospitals never deny that, as a factual matter, the standard enunciated by the persuasive authority cited by *Gulf Power* is satisfied here. *See* 669 F.3d at 323 (citing 1 Restatement (Second) of Judgments § 39 (1982) ("Restatement")). Restatement § 39 provides that a "person who is not a party to an action but who controls or substantially participates in the control of the presentation on behalf of a party is bound by the determination of issues decided as though he were a party." In explaining why, the Restatement explains that a "person who assumes control of litigation on behalf on another has the opportunity to present proofs and argument on the issues litigated. Given this opportunity, he has had his day in court and should be concluded by the result." Restatement § 39 cmt. a. "To have control of litigation requires that a person have effective choice as to the legal theories and proofs to be advanced in behalf of the party to the action." *Id.* § 39 cmt. c. Importantly, however, it is "sufficient that the choices were

in the hands of counsel responsible to the controlling person; moreover, the requisite opportunity may exist even when it is shared with other persons." *Id.*

Fifth, the nonbinding authorities on which the Providence Hospitals rely do not support a contrary result. *See* Pls.' Reply at 22–23 (citing *Univ. of Colo. Health v. Azar*, 486 F. Supp. 3d 185 (D.D.C. 2020), and *Nat'l Med. Enters. v. Sullivan*, 916 F.2d 542 (9th Cir. 1990)). *University of Colorado Health* concluded that a complaint's "boilerplate recital that a new claimant is *currently* subject to the 'common ownership and control' of a previous claimant is [an] insufficient basis to invoke issue preclusion against the new claimant" at the motion-to-dismiss stage. 486 F. Supp. 3d at 205–06 (emphasis added). The record here on summary judgment, in contrast, addresses both the past and the present, as well as control over the *St. Mary* litigation specifically. *See* Def.'s SOF ¶¶ 15, 19; Pls.' SOF Resp. ¶¶ 15, 19. As for *National Medical Enterprises*, the court there correctly rejected an attempt to apply issue preclusion *against* the Secretary under facts distinguishable from those here. *See* 916 F.2d at 544–56.

In sum, the Providence Hospitals have repaid the Secretary's willingness to use stipulations of fact to try to avoid the burden and expense of discovery by waiting until their final brief to contort what "control" over the *St. Mary* litigation means. *See, e.g.*, J. Status Rep. ¶ 3 (Jan. 5, 2026) (ECF No. 17) (explaining parties were negotiating potential means to avoid discovery on the Secrtetary's preclusion defenses); J. Status Rep. ¶ 3 (Feb. 12, 2026) (ECF No. 20) (same); Stip. (Mar. 6, 2026) (ECF No. 25-3). If the Court concludes that a material question of fact exists on the question of control over the *St. Mary* litigation, the appropriate course would be to permit limited discovery on that topic. *See Taylor v. Sturgell*, 553 U.S. at 907 ("We acknowledge that direct evidence justifying nonparty preclusion is often in the hands of plaintiffs rather than defendants. . . . In these situations, targeted interrogatories or deposition questions can reduce the

information disparity.") (cleaned up); *Long v. Howard Univ.*, 550 F.3d 21, 24 (D.C. Cir. 2008) (explaining defendant's assertion of affirmative defense in its answer preserves issue).[2]

*Applying issue preclusion does not work a basic unfairness.* The Secretary also explained that applying issue preclusion here does not work a basic unfairness, which under Circuit precedent potentially arises under three circumstances: (1) if the prior proceedings were seriously defective, (2) if the losing party lacked any incentive to litigate the point in the first case, or (3) if there has been an intervening change in controlling legal principles. *See* Def.'s Mem. at 31 (citing *Canonsburg Gen. Hosp.*, 807 F.3d at 306). The Providence Hospitals do not contest the Secretary's showing that the first two circumstances are absent here. *See id.* Instead, the Providence Hospitals rely exclusively on the supposed unfairness of *St. Mary* having preclusive effect because it applied the *Chevron* framework. *See* Pls.' Reply at 24–26.

The Court should reject that argument. Although *Loper Bright*'s impact on issue preclusion still appears to be a question of first impression, the Secretary previously explained the multiple reasons why *Loper Bright* does not constitute a qualifying change in the law. *See* Def.'s Mem. at 33–34. Equitable considerations also counsel strongly in favor of applying issue preclusion against the Providence Hospitals. Among other things, the Secretary explained that

---

[2] Among other things, the Secretary believes that such discovery would demonstrate that throughout the *St. Mary* litigation, the same individual who previously appointed counsel to represent St. Mary and Mission Hospital before the Board (Jo Ann Escasa-Haigh) was a senior executive of Providence St. Joseph Health serving in multiple roles, including as its Executive Vice President and Chief Financial Officer. Such discovery would also demonstrate that, like the two subsidiaries in *Gulf Power*, St. Mary and Mission Hospital "are hardly subsidiaries representing distant wings of a far-flung conglomerate. They both provide [hospital care] in a specific region of the country, and do so in close coordination." *Gulf Power*, 669 F.3d at 324; *cf.* Providence St. Joseph Health, IRS Form 990 for 2024, pt. III (Nov. 5, 2025) (ECF No. 25-4) ("Today, our 125,000 caregivers (all employees) serve in 51 hospitals [providing] a comprehensive range of health and social services across Alaska, California, Montana, New Mexico, Oregon, Texas and Washington.") (all-caps emphasis omitted).

granting the relief the Hospitals now seek—vacatur of the relevant portion of the FY 2024 final rule—would be unfair to the hundreds of non-party hospitals that could be injured because the Secretary must apply the rural floor each year in a budget-neutral manner. *See id.* at 32–33. The Secretary also explained how the Hospitals showed no urgency in prosecuting their administrative appeals so that, by the time the Hospitals filed this action in August 2025—after waiting over a year to ask the Provider Reimbursement Review Board (the "Board") to grant expedited judicial review—the Secretary had applied the uniform method for two additional FYs (FYs 2025 and 2026). *See id.* at 32. The Providence Hospitals address neither of these points.

Moreover, St. Mary and Mission Hospital (and by extension, Providence St. Joseph Health) had the opportunity to prosecute an appeal in *St. Mary* at approximately the same time the Supreme Court was considering *Loper Bright*. *See* Def.'s Mem. at 27 n.3. That they chose not to do so further counsels that applying issue preclusion here would not work a basic unfairness. *See, e.g.*, *Campaign Legal Ctr. v. FEC*, Civ. A. No. 22-3319 (CRC), 2023 WL 6276634, at *10 (D.D.C. Sept. 26, 2023) (reaching such a conclusion where plaintiffs "could have benefited from the purported intervening change" in the law by prosecuting an appeal in their earlier case).

Finally, the Providence Hospitals mistakenly accuse the Secretary of "borrow[ing] claim-preclusion holdings" in arguing that *Loper Bright* does not constitute a qualifying change in the law for issue-preclusion purposes. Pls.' Reply at 24 (citing *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394 (1981), and *Agendia Inc. v. Kennedy*, No. 24-5180, 2025 WL 1467116 (D.C. Cir. May 22, 2025)). The Secretary did no such thing. *Compare* Def.'s Mem. at 26 (discussing the two cases solely in the context of *claim* preclusion), *with id.* at 31, 33–34 (discussing intervening-change-in-law exception to issue preclusion).

### B. The Uniform Method Is Lawful and Lawfully Explained

#### 1. The Hospitals' Statutory-Authority Claim Lacks Merit

In cross-moving for summary judgment, the Secretary explained that statutory text, canons of statutory construction, statutory history and context, and the contemporary judgment of the Executive Branch all demonstrate that the uniform method used by the Secretary for over 16 years satisfies *Loper Bright*'s "best meaning" standard. *See* Def.'s Mem. at 35–41. For example, citing *Hikvision USA, Inc. v. FCC*, 97 F.4th 938 (D.C. Cir. 2024), the Secretary invoked the prior-construction canon and argued that in instructing the Secretary to "administer" BBA § 4410(b) "in the same manner as the Secretary administered such subsection (b) . . . for [hospital] discharges occurring during [FY] 2008 (through a uniform, national adjustment to the area wage index)," ACA § 3141 instructed the Secretary to reuse the uniform method used in FY 2008 beginning in FY 2011. *See* Def.'s Mem. at 36–38. The Secretary further explained that the Hospitals' narrow reading of ACA § 3141—whereby its sole purpose was to require the Secretary to abandon his in-State modification to the uniform method—violates the surplusage and grammar canons by misconstruing the ACA's "uniform, national adjustment" language. *See id.* at 38–40.

The Hospitals' final brief ignores key aspects of the *Loper Bright* standard for statutory interpretation, improperly relies for the first time on supposed legislative history, and misconstrues statements in the Secretary's *St. Mary* briefing filed over eight years after the ACA was enacted.

*The Hospitals' narrow reading ignores the Secretary's contemporaneous statutory interpretation, which has remained consistent for over 16 years.* In addition to ignoring the Secretary's discussion of statutory history and context, *see* Def.'s Mem. at 40–41, the Hospitals' final brief ignores *Loper Bright*'s admonition regarding the significant persuasive value of an agency's contemporaneous statutory interpretation, *see id.* at 41 (citing *Loper Bright*, 603 U.S. at 393). The Secretary's opening brief explained that just a few months after ACA § 3141 was

enacted, the Secretary interpreted that statute as requiring the Secretary to return to the uniform method used in FY 2008. *See id.* at 10–11, 41. The Secretary's interpretation of ACA § 3141 has remained consistent for over 16 years. *See id.* "Because [the Secretary's] interpretation of [ACA § 3141] was 'issued contemporaneously with the statute' and has 'remained consistent over time,' it is 'especially useful in determining the statute's meaning.'" *B. P. J.*, 146 S. Ct. at 2371 (quoting *Loper Bright*, 603 U.S. at 394).[3]

*The Hospitals' new-found reliance on legislative history is forfeited and lacks merit.* The Hospitals' opening brief discussed ACA § 3141 at length even though it was not even mentioned in the two anonymous regulatory comments giving rise to this case. *See* Pls.' Mem. at 6–7, 19–21. However, at no point did the Hospitals refer to the ACA's legislative history, nor did the Secretary do so in his opening brief. Despite the foregoing, the Hospitals now rely on language from a single committee report and go so far as to attach an excerpt from that report to their final brief. *See* Pls.' Reply at 8 (citing S. Rep. No. 111-89, at 227 (2009)). The Court should reject the Hospitals' new-found reliance on legislative history for two independent reasons.

---

[3] The Hospitals contend that ACA § 3141 could not possibly have ratified the uniform method used in FY 2008 because that method clearly violated BBA § 4410(b), which the ACA did not repeal. *See* Pls.' Reply at 10–11. The Hospitals' "clearly violated" premise conflicts with *St. Mary*. Moreover, the authorities the Hospitals cite did not involve a situation where, as here, Congress used statutory text to specifically instruct a federal official to "administer" a statute in the same manner he had done in a specific, past time period. *See, e.g.*, *Thompson v. Clifford*, 408 F.2d 154, 164 (D.C. Cir. 1968) (addressing dispute over refusal to bury convicted felon's remains in Arlington National Cemetery and rejecting ratification-by-acquiescence and ratification-by-appropriation arguments where little evidence was presented that Congress knew of Army regulation therein challenged); *D.C. Fed'n of Civic Ass'ns v. Airis*, 391 F.2d 478, 481–82 (D.C. Cir. 1968) (rejecting ratification-by-appropriation argument in case where no evidence was presented that Congress knew of officials' plan to construct highways without following required statutory procedures). They also did not involve a situation where, as here, the first lawsuit challenging the agency's contemporaneous statutory interpretation was filed 15 years after the agency first announced its interpretation.

First, the Hospitals forfeited the argument by waiting to raise it in their final brief. *See, e.g.*, *Anglers Conservation Network v. Pritzker*, 139 F. Supp. 3d 102, 116 n.10 (D.D.C. 2015) (finding argument raised for first time in plaintiffs' combined reply in support of motion for summary judgment and opposition to defendants' cross-motion for summary judgment was forfeited, explaining: "The Court need not address this because an argument not raised in an opening brief is forfeited.").

Second, the argument lacks merit. The Supreme Court has made clear that "legislative history is not the law." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 523 (2018). "When it comes to interpreting the law, speculation about what Congress may have intended [using legislative history] matters far less than what Congress actually enacted." *Medina v. Planned Parenthood S. Atl.*, 606 U.S. 357, 381 (2025); *see also FS Credit Opportunities Corp. v. Saba Capital Mgmt.*, 146 S. Ct. 1546, 1558–59 (2026) (emphasizing statutory interpretation must be driven by an analysis of the language enacted and rejecting reliance on legislative history); *Cavazos v. Haaland*, 579 F. Supp. 3d 141, 151 (D.D.C. 2022) (Kollar-Kotelly, J.) ("As with all statutory interpretation, the Court will not resort to legislative history to cloud a statutory text that is clear.") (internal quotation marks and citation omitted). And the language Congress actually enacted in ACA § 3141 does not support the Hospitals' narrow reading. *See* Def.'s Mem. at 38–40.

The single report on which the Hospitals now rely also does not bear the weight they give it. "Congress wrote key parts of the [ACA] behind closed doors rather than through the traditional legislative process. . . . And Congress passed much of the [ACA] using a complicated budgetary procedure known as 'reconciliation,' which limited opportunities for debate and amendment, and bypassed the Senate's normal 60-vote filibuster requirement." *King v. Burwell*, 576 U.S. 473, 491–92 (2015) (internal quotation marks and citation omitted). The report in question

accompanied the introduction of a 1,502-page bill in October 2009: America's Healthy Future Act, S. 1796, 111th Cong. (Oct. 19, 2009) ("Senate Bill 1796"). Section 3142 of Senate Bill 1796 used language largely matching that which would eventually become ACA § 3141.

Importantly, however, the ACA omitted language found in Senate Bill 1796. The title of section 3142 of Senate Bill 1796 included several additional words at the end, reading: "**APPLICATION OF BUDGET NEUTRALITY ON A NATIONAL BASIS IN THE CALCULATION OF THE MEDICARE HOSPITAL WAGE INDEX FLOOR FOR EACH ALL-URBAN AND RURAL STATE**." America's Healthy Future Act, S. 1796, 111th Cong. § 3142 (underlined emphasis added); *see also* S. Rep. No. 111-89, at 227 (reproducing section title). This language mirrored that used in companion bills introduced five months earlier by Members of Congress from Connecticut and New Jersey. *See* Safeguarding Our Hospitals' Futures Act of 2009, S. 1108, 111th Cong. § 2 (May 20, 2009); Safeguarding Our Hospitals' Futures Act of 2009, H.R. 2525, 111th Cong. § 2 (May 20, 2009). But a month after Senate Bill 1796's introduction, these additional words were omitted in the Senate amendment to the House bill that would eventually be enacted as ACA § 3141. *See* S. Amend. 2786, 155 Cong. Rec. S11607, S11695 (daily ed. Nov. 19, 2009) (amending the since-renamed Patient Protection and Affordable Care Act, H.R. 3590, 111th Cong. (2009)).

Why was the language omitted? Recall that hospitals in rural States with few or no rural-floor hospitals (i.e., low-wage urban hospitals) largely benefited from the Secretary's in-State modification of the uniform method. *See* FY 2009 Final Rule, 73 Fed. Reg. 48,434, 48,572 (Aug. 19, 2008), RR 4229. Could it be that in order to garner the votes of Members of Congress from such rural States, the drafters of the Senate amendment struck a compromise to soften the financial blow of eliminating the in-State modification by agreeing to that which the plain language of the legislation to be enacted already signified? In other words, by instructing the Secretary to

administer BBA § 4410(b) beginning in FY 2011 in the same manner as the Secretary had done in FY 2008, the legislation required the Secretary to use the uniform method he used in FY 2008, which adjusted all hospitals' wage-index values (including those of rural-floor hospitals). And what did individual Members of Congress think, including Members of the House (a body for which no committee report has been cited by the Hospitals)? Did they know about the statements on page 227 of the 456-page report on which the Hospitals now rely? The record does not say and, tellingly, the Hospitals point to no materials indicating otherwise.

The single report on which the Hospitals rely is problematic in other critical respects. Most notably, in purporting to describe present law, the report makes assertions about legislation enacted 12 years earlier (the BBA). *See* S. Rep. No. 111-89, at 227 ("BBA established that the budget neutrality requirement for the rural floor be achieved by adjusting the wage index of all other hospitals not affected by the rural floor."). Such statements cannot be considered legislative history of the BBA. *See, e.g.*, *Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 298 (2010) (rejecting reliance on "legislative 'history' . . . written 13 years after the amendments were enacted"). Moreover, the report asserts that Senate Bill 1796 "would require application of [the] budget neutrality requirement associated with the effect of the . . . rural floor on a national, rather than state-specific adjustment (through a uniform, national adjustment to the area wage index)." But the report never explains *how* the bill's language would have achieved this result: by instructing the Secretary to "administer" BBA § 4410(b) beginning in FY 2011 "in the same manner as the Secretary administered such subsection (b) . . . for discharges occurring during [FY] 2008 . . . ." S. 1796, 111th Cong. § 3142. Accordingly, the Court should reject the Hospitals' new-found reliance on legislative history. *See, e.g.*, *Cavazos*,

579 F. Supp. 3d at 153 ("Whatever Plaintiffs' understanding of the legislative history [of the statute], the plain meaning of the statutory language . . . forecloses Plaintiffs' reading.").

*The Hospitals' reliance on St. Mary briefing lacks merit.* Finally, the Hospitals err in arguing that the Secretary's position in this case somehow conflicts with statements made in briefing submitted in *St. Mary* over eight years after the ACA was enacted. According to the Hospitals, the Secretary argued in that case that the uniform method used in pre-ACA time periods did not violate BBA § 4410(b) because the uniform method did not result in a budget-neutrality adjustment being imposed on rural-floor hospitals at all. *See* Pls.' Reply at 2, 12. The Court should reject the Hospitals' argument because it misconstrues the Secretary's argument in *St. Mary* and ignores the context in which that case arose.

As the Secretary explained in his opening brief, *see* Def.'s Mem. at 7–8, he adopted the uniform method in FY 2008 after concluding that its application was "substantively equivalent" to an "iterative calculation of budget neutrality and wage indices," FY 2008 Final Rule, 72 Fed. Reg. 47,130, 47,325 (Aug. 22, 2007), RR 2829. Under the iterative method, the Secretary would have applied BBA § 4410 by: (1) raising the wage-index values of rural-floor hospitals to the pre-budget neutrality rural wage index; (2) adjusting the wage index for all non-rural-floor hospitals to achieve budget neutrality; and (3) decreasing the wage-index values of rural-floor hospitals so that they did not exceed the rural floor consistent with the Secretary's understanding of congressional intent, which was to "set a floor for urban hospitals, not to pay urban hospitals a wage index higher than the wage index." *Id.* But because that process would have produced total payments less than they were before applying the rural floor, the Secretary's iterative method would have repeated the foregoing steps "until the wage index and the budget neutrality adjustment stabilize." *Id.*

Importantly, the Secretary explained that the uniform method he decided to use, which adjusted all hospitals' wage-index values, essentially achieved the same result. *See id.*

Fast forward to the *St. Mary* litigation, which the parties agree was commenced over seven years after the ACA was enacted and did not involve time periods subject to ACA § 3141. According to the Hospitals here: "In *St. Mary*, the Secretary represented that Section 4410(b) 'is not applied to low-wage urban hospitals' and that any reductions those hospitals experience 'are not budget neutrality adjustments at all,' a premise the district court adopted." Pls.' Reply at 12 (quoting, without citation, *St. Mary* Def.'s Cross-MSJ Reply at 3, 10, 10 Administrative Record ("AR") 10390, 10397). However, the Secretary's *St. Mary* reply was describing the iterative method, not the uniform method actually used by the Secretary. *See St. Mary* Def.'s Cross-MSJ Reply at 10, 10 AR 10397 ("Properly understood, then, the iterated adjustments to the wage indices of low-wage urban hospitals are not budget neutrality adjustments at all. They do not achieve budget neutrality at all, but instead necessitate a second adjustment to restore it."); *see also id.* at 11 n.1, 10 AR 10398 (explaining that the Secretary adopted the "simplified methodology" of the uniform method because it is "substantively equivalent to the more complicated iterative procedure"). The same is true of the relevant portion of Judge Pan's decision. *See St. Mary*, 581 F. Supp. 3d at 137 ("Properly understood, the iterated adjustments to the wage indices of low-wage urban hospitals are not budget-neutrality adjustments at all, but instead are rural-floor adjustments."). And for over 16 years, the Secretary has consistently interpreted ACA § 3141 as requiring the Secretary to use the uniform method applied in FY 2008—something, again, the Hospitals ignore.

2. <u>The Complaint's Arbitrary-and-Capricious Claim Lacks Merit</u>

In his opening brief, the Secretary explained that the Complaint's arbitrary-and-capricious claim challenging the uniform method should be rejected because it simply repackages the same

grounds asserted in support of its statutory-authority claim. *See* Def.'s Mem. at 41–42. The Secretary further explained that an inadequate-explanation argument made for the first time in the Hospitals' opening brief was forfeited, raised an issue that at most was harmless error, and otherwise lacked merit. *See id.* at 42–44. The Hospitals have since clarified that they do not assert an inadequate-explanation claim. *See* Pls.' Reply at 13 ("The Hospitals do not press that claim."). And because the Hospitals also concede that the Complaint's arbitrary-and-capricious claim mirrors their statutory-authority claim, *see id.* (stating that "[t]he Secretary is correct that this claim tracks the Hospitals' statutory-authority claim"), the Secretary stands on his earlier briefing.

* * *

The Hospitals repeatedly accuse the Secretary of having pursued his own public-policy objectives in the face of contrary instructions from Congress. *See* Pls.' Reply at 1, 5, 7, 28. But in asking this Court to declare unlawful a uniform method the Secretary has used consistently for over 16 years after the ACA instructed the Secretary to use the uniform method he used in FY 2008, it is the Hospitals that seek to use *Chevron*'s overruling to overturn Congress's public-policy choices. The appropriate venue for the Hospitals' policy argument is Congress, not this Court.

## II. <u>The Hospitals' Challenge of the Self-Disallowance Regulations Lacks Merit</u>

The Hospitals' final brief concedes through silence that if the Court agrees that the uniform method is lawful, the Court need not reach the subsidiary question of whether the self-disallowance regulations are lawful. *See* Def.'s Mem. at 44. Instead, the Hospitals challenge the Secretary's alternative ripeness argument (presented in the event the Court agrees with the Hospitals as to the uniform method) and rely almost exclusively on case law rather than statutory text to argue that the regulations exceed the Secretary's statutory authority. Neither argument has merit.

**A. The Challenge Is Unripe**

It would be premature for the Court to address the regulations if the Court concludes that the uniform method is unlawful. *See* Def.'s Mem. at 45–46. The Hospitals' argument to the contrary relies primarily on a misunderstanding of what form of judicial relief is permissible under Circuit precedent. In requesting that the Court order supplemental briefing as to remedy on the uniform method, if necessary, the Secretary explained that in Medicare cases such as this one binding precedent establishes that a court has no jurisdiction to order specific relief of the type the Hospitals seek here. *See id.* at 44 (citing *Palisades Gen. Hosp. v. Leavitt*, 426 F.3d 400, 403 (D.C. Cir. 2005)). A "district court reviewing a final agency action," *Palisades* explained, "does not perform its normal role but instead sits as an appellate tribunal." 426 F.3d at 403 (internal quotation marks and citations omitted). "Thus, under settled principles of administrative law, when a court reviewing agency action determines that an agency made an error of law, the court's inquiry is at an end: the case must be remanded to the agency for further action consistent with the correct legal standards." *Id.* (internal quotation marks and citations omitted).

The Secretary further explained that if the Court were to vacate the portion of the FY 2024 final rule challenged here, the appropriate judicial course would be to remand this matter for the Secretary to determine an appropriate remedy in the first instance. *See* Def.'s Mem. at 45. The Secretary would then have an opportunity to decide whether to apply the Board's adverse self-disallowance findings. *See id.* Judicial review of a decision the Secretary has not yet made is the very definition of what the ripeness doctrine prevents.

**B. The Regulations Are Lawful and Lawfully Explained**

1. <u>The Regulations Are Within the Secretary's Statutory Authority</u>

Any judicial inquiry into whether regulations exceed an agency's statutory authority must begin with an examination of the statutes on which the agency relied when promulgating the

regulations. The Hospitals nonetheless insist that this Court should *begin* with a Supreme Court decision issued in 1988 that did not address the regulations at issue here, did not address the primary statute on which the Secretary relied in promulgating the regulations at issue here, and did not reach the core "holding" claimed by the Hospitals. The Court should decline that invitation and affirm the self-disallowance regulations' validity if the Court concludes the challenge is ripe.

*The Hospitals' reading of § 1395g(a) lacks merit.* Neither the Complaint nor the Hospitals' opening brief addressed the principal statute on which the Secretary relied in promulgating the self-disallowance regulations: 42 U.S.C. § 1395g(a). In relevant part, § 1395g(a) instructs that "no [Medicare Part A] payments shall be made to any provider unless it has furnished such information as the Secretary may request in order to determine the amounts due such provider under this part for the period with respect to which the amounts are being paid or any prior period."

The Secretary explained that this language has been part of the Medicare statute for nearly half a century and does not conflict with the statute cited by the Hospitals' Complaint and opening brief, 42 U.S.C. § 1395*oo*(a)(1)(A)(i), which does not even govern the particular type of Board appeal at issue here. *See* Def.'s Mem. at 3, 47–49. The Secretary further explained that the Hospitals essentially ask this Court to misapply the general/specific canon of statutory construction where there is no conflict between §§ 1395g(a) and 1395*oo*(a)(1)(A)(i), and that, taken to its logical conclusion, the Hospitals would interpret the Medicare statute as precluding the Secretary from enforcing *any* non-statutory requirement imposing a condition precedent on Medicare Part A payment if the provider in question can file a Board appeal. *See id.*

The Hospitals' final brief never addresses their lack of a limiting principle. It also barely joins issue as to § 1395g(a), truncating the statute and arguing that it "broadly relates to the Secretary requesting information 'in order to determine the amounts due such provider.'" Pls.'

Reply at 16 (quoting § 1395g(a)). The Secretary, they claim, does not require information from the Hospitals for them to challenge the uniform method. *See id.*

But § 1395g(a) delegates to the Secretary, not providers, the choice of what information the Secretary needs to make payment. *Cf. Battle Creek Health Sys. v. Kennedy*, 151 F.4th 464, 472 (D.C. Cir. 2025) (emphasizing terms of statute there in question "give the Secretary of Health and Human Services (or the Secretary's delegee)—not affected hospitals—responsibility for making" the determination in question). And the Secretary explained in 2015 that by requiring providers to state with specificity in their cost reports the precise nature of their challenges to Medicare payment policies and to explain their quantification of amounts allegedly owed, the self-disallowance regulations would "contribute importantly" to the administration of the Medicare program by, among other things, "enhance[ing] CMS' ability to accurately estimate the [Medicare] program's potential liabilities (for example, for purposes of the agency's preparation of required financial statements)." CY 2015 Final Rule, 80 Fed. Reg. 70,298, 70,558 (Nov. 13, 2015), RR 2128.

*Bethesda* does not require a contrary outcome. The "precedential value of a decision is defined by the context of the case from which it arose." *Cactus Canyon Quarries, Inc. v. Fed. Mine Safety & Health Review Comm'n*, 820 F.3d 12, 18 (D.C. Cir. 2016) (internal quotation marks and citation omitted). "Looking to the context of the putative controlling decision—the facts, the statutory or constitutional provisions at issue, the arguments made by the parties and decided or reserved by the court, and the rationale underlying the decision—they determine whether the holding of an existing case controls the outcome of a pending case." *UC Health v. NLRB*, 803 F.3d 669, 683 (D.C. Cir. 2015) (Edwards, J., concurring).

The Secretary's opening brief examined *Bethesda Hospital Ass'n v. Bowen*, 485 U.S. 399 (1988), and explained why it does not control here. *See* Def.'s Mem. at 50. When *Bethesda* was decided, the Secretary did not have any regulations—let alone codified regulations promulgated under § 1395g(a)—that required hospitals to submit information like that required by the self-disallowance regulations at issue here. *See id.* The Secretary nonetheless argued in *Bethesda* that § 1395*oo*(a)(1)(A)'s requirement that a provider be "dissatisfied with a final determination of . . . its fiscal intermediary" was (1) jurisdictional and (2) necessarily incorporated an exhaustion requirement such that a provider had to at least present its challenge to a Medicare payment policy in a cover letter submitted with its cost report sent to its fiscal intermediary (now known as a Medicare administrative contractor ("MAC")). *See* 485 U.S. at 404, 408. The Supreme Court agreed on the first point but rejected the second. *See id.*

The Hospitals' final brief now cites a core "holding" from *Bethesda* that, on further examination, does not exist. According to the Hospitals, "*Bethesda* holds that providers need not present disputes to an entity that lacks authority to grant relief." Pls.' Reply at 15. This supposed "controlling holding rests on [§ 1395*oo*(d)], which gives the Board authority to decide matters 'covered by such cost report' 'even though such matters were not considered by the intermediary,' and which applies regardless of which clause [of § 1395*oo*(a)(1)] supplies the appeal route." *Id.*

That is not what the Supreme Court held. Section 1395*oo*(d) states, in relevant part: "The Board shall have the power to affirm, modify, or reverse a final determination of the fiscal intermediary with respect to a cost report and to make any other revisions on matters covered by such cost report (including revisions adverse to the provider of services) even though such matters were not considered by the intermediary in making such final determination." True, the *Bethesda* Court observed that this language "allows the Board, once it obtains jurisdiction pursuant to

subsection (a), to review and revise a cost report with respect to matters not contested before the fiscal intermediary. *The only limitation prescribed by Congress* is that the matter must have been 'covered by such cost report,' that is, a cost or expense that was incurred within the period for which the cost report was filed, even if such cost or expense was not expressly claimed." *Id.* at 406 (quoting § 1395*oo*(d)) (emphasis added). But this statement must be understood in the context of the case before the Court, where there were no regulations requiring a provider to claim an item on its cost report to receive payment even if doing so violated Medicare payment policy. In other words, while the Court interpreted § 1395*oo*(a)(1)(A) and (d) as not imposing such a requirement, the Court did not foreclose the possibility that *the Secretary* could impose such a requirement by issuing regulations under statutory authority (§ 1395g(a)) nowhere discussed in *Bethesda*.

Moreover, the Hospitals' insistence that *Bethesda* establishes a sweeping futility exception further underscores why the Court should order supplemental briefing as to remedy, if necessary. *See* Def.'s Mem. at 54–55. The Hospitals previously asked the Court to vacate the self-disallowance regulations in their entirety. *See* Compl. at 42 (Req. for Relief ¶ 3) (ECF No. 1); Pls.' Proposed Order ¶ 3 (ECF No. 23-2). However, doing so would eliminate the regulations even as applied to cases where it would not have been futile for a provider to timely submit information with its cost report. *Cf. Univ. of Chi. Med. Ctr. v. Kennedy*, No. 24-5188, 2025 WL 3183158, at *1 (D.C. Cir. Nov. 14, 2025) (addressing dispute over indirect costs of graduate medical education); 42 C.F.R. § 413.24(f)(5)(i) (requiring that a provider submit various forms of information with its cost report, including data required for the MAC to calculate indirect costs of graduate medical education and disproportionate share hospital payments). The Hospitals have since backpedaled, stating: "At a minimum, the regulations are invalid *as applied* to challenges to the budget neutrality adjustment, which the [MAC] is powerless to alter." Pls.' Reply at 17

(emphasis in original). The remedial question, if found to be an issue at all, is important and warrants supplemental briefing.

2. Issuance of the Regulations Was Not Arbitrary and Capricious

Finally, the Secretary explained that in promulgating the regulations, he responded to comments challenging the Secretary's statutory authority and relying on *Bethesda*. *See* Def.'s Mem. at 53; *see also* 2015 Final Rule, 80 Fed. Reg. at 70,556–58, 70,565–66, RR 2126–28, 2135–36. Contrary to the portrait painted by the Hospitals, *see* Pls.' Reply at 17, the record demonstrates that the Secretary did not ignore these issues. He addressed them and simply drew different conclusions than the Hospitals. The deferential standard for arbitrary-and-capricious review of course permits just that. *See Rural Cellular Ass'n v. FCC*, 588 F.3d 1095, 1105 (D.C. Cir. 2009).

## CONCLUSION

For these reasons and those stated in the Secretary's opening memorandum, the Court should grant summary judgment to the Secretary and deny the Hospitals' motion for summary judgment.

Dated: August 27, 2026

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By: *\/s/ William Thanhauser*
WILLIAM THANHAUSER
D.C. Bar #1737034
Assistant United States Attorney
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-7706
william.thanhauser@usdoj.gov

*Attorneys for the United States of America*

*Of Counsel:*

ROBERT FOX FOSTER
*Acting General Counsel*

ELIZABETH C. KELLEY
*Deputy General Counsel and*
*Chief Legal Officer for CMS*

BETSY M. PELOVITZ
*Associate General Counsel*

MICHAEL J. GERARDI
*Deputy Associate General Counsel*
*for Litigation*

JAMES F. SEGROVES
*Attorney*

*U.S. Department of Health and Human*
*Services*